UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOHNNY WILLIAM JOHNSON, III,

Petitioner,

v.

NETHANJAH BREITENBACH,

Respondent.

Case No. 2:22-cv-00462-APG-EJY

**Order Denying
First-Amended Petition
Under 28 U.S.C. § 2254**

[ECF No. 35]

Petitioner Johnny William Johnson, III has filed a counseled First-Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. ECF No. 35. Johnson asserts that his trial counsel failed to investigate his innocence and that he is innocent of the crimes for which he has been convicted. For the reasons discussed below, I deny the First-Amended Petition and a Certificate of Appealability.

**I.     BACKGROUND**

**A.     Factual Background[1]**

Officer Michael David Cruz of the Las Vegas Metropolitan Police Department testified that on April 20, 2012, he heard gunshots around 8:53 in the evening while on patrol. ECF No. 48-33 at 44–45. After finding the residence where the shots had been fired, Officer Cruz "proceeded into the front yard of the residence, [and] there were two black males and another black female, and then another black female [who had been shot and] was slumped over in the doorway of that residence." *Id.* at 47. Dr. Deborah Kuhls, a trauma surgeon at University

---

[1] I make no credibility findings or other factual findings regarding the truth or falsity of the evidence from the state court. My summary is merely a backdrop to my consideration of the issues presented in the case.

Medical Center, testified that she treated Monique Traylor, the woman who had been shot. *Id*. at 66. Traylor suffered from a bullet wound in the abdomen, resulting in her spleen and left kidney being removed and her colon being reconstructed. *Id*. at 78.

Traylor testified that her boyfriend, Allen Griffin, got in an argument with Johnson on the afternoon of April 20, 2012 about money owed for drugs. ECF No. 48-33 at 227, 252. Later that day, around 8:30 to 8:50 p.m., Johnson returned, "pull[ed] out a gun, and he start[ed] shooting." *Id*. at 231.

Griffin testified that on April 20, 2012 he had been drinking alcohol and smoking marijuana and PCP. ECF No. 48-33 at 167. That afternoon, Griffin "got[ ] into some words with" Johnson's brother while Johnson was present. *Id*. at 165, 170, 175, 177. Then, at about 8:50 p.m. that evening, Griffin, Traylor, and Traylor's cousin were outside when Griffin heard three or four gunshots, resulting in Traylor getting shot. *Id*. at 84, 88, 93–94. Traylor's daughter, D.T., who was 13-years old, was inside the house at the time of the shooting. *Id*. at 98.

Immediately following the shooting, Griffin was shown a potential suspect and positively identified that suspect as the shooter. ECF No. 48-33 at 117. However, police later exonerated that man. *Id*. Several months later, on August 31, 2012, Griffin identified Johnson from a photographic lineup; however, at trial he testified that he pointed out a different individual in that photographic lineup but that the detectives pointed to Johnson and "demanded" that Griffin identify Johnson instead. *Id*. at 151–52, 171, 178, 182. At the trial, Griffin testified that he did not know who shot Traylor. *Id*. at 175. The State implied that Griffin did not want to incriminate Johnson at trial due to Griffin's gang membership and hesitancy to "snitch" on others. *Id*. at 156–158.

Traylor was shown three photographic lineups containing Johnson at different times following the shooting, but she identified Johnson only during the third photographic lineup conducted on August 31, 2012. ECF No. 48-33 at 247.  Traylor and D.T. both identified Johnson as the shooter at trial. *Id.*; ECF No. 48-34 at 156.  Marquet Polk, Traylor's cousin, testified that he could not identify the shooter. ECF No. 48-34 at 50, 52, 56.

Other than the photographic and trial identifications, there was no "physical proof that [Johnson] was actually present during that shooting." ECF No. 48-35 at 219.  However, a detective testified that (1) Mitchell Johnson (hereinafter Mitchell), Johnson's brother, told detectives that Johnson told him to "just go over there and talk to them, . . . tell them it was an accident" and (2) Johnson requested that his mother call Traylor. ECF No. 48-35 at 202, 211. Additionally, a firearms examiner determined that the eight cartridge casings found at the crime scene were fired by the same firearm as three cartridge casings that were found at an apartment associated with Johnson. ECF Nos. 48-34 at 164, 170–71; 48-36 at 68.

**B.     Procedural Background**

A jury found Johnson guilty of two counts of attempted murder with the use of a deadly weapon, battery with the use of a deadly weapon resulting in substantial bodily harm, assault with a deadly weapon, discharging a firearm, carrying a concealed firearm, and possession of a firearm by an ex-felon. ECF No. 48-44.  Johnson was sentenced to an aggregate term of 30 to 75 years in prison. *Id*.  He appealed, and the Nevada Court of Appeals affirmed on January 21, 2015. ECF No. 49-27.

Johnson filed a petition for writ of habeas corpus in state court on May 26, 2015. ECF No. 49-41.  The state court granted counsel for Johnson, and he filed a counseled supplemental memorandum in support of his petition. ECF No. 50-16.  The state court denied the petition on

December 6, 2016. ECF No. 50-21.  Johnson appealed, and the Nevada Court of Appeals affirmed on July 17, 2018. ECF No. 50-45.

Johnson filed a motion for modification of his sentence on December 19, 2019. ECF No. 50-50.  The state court denied the motion on February 4, 2020. ECF No. 51-2.  On July 17, 2020, Johnson filed a motion to submit new evidence and a second state habeas petition. ECF Nos. 51-3, 51-5.  The state court denied the second habeas petition on October 8, 2020, and denied the motion to submit new evidence on March 2, 2021. ECF Nos. 51-7, 51-24.  Johnson appealed the denial of his second state habeas petition, and the Nevada Court of Appeals affirmed on June 28, 2021. ECF No. 51-31.

Johnson commenced this action on March 14, 2022. ECF No. 1.  I appointed counsel for Johnson, and Johnson filed his counseled First-Amended Petition on March 14, 2024. ECF Nos. 19, 24, 35.  In his First-Amended Petition, Johnson raised the following grounds for relief: (1) his trial counsel failed to investigate his innocence and the possibility that Mitchell was the shooter and (2) he is factually innocent of the crimes. ECF No. 35.  The respondent moved to dismiss the First-Amended Petition. ECF No. 55.  I denied the motion to dismiss without prejudice. ECF No. 63.  The respondent answered the First-Amended Petition on August 15, 2025. ECF No. 73.  Johnson replied on November 14, 2025. ECF No. 76.

**II.     GOVERNING STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act (AEDPA) sets forth the standard of review generally applicable in habeas corpus cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

4

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75;

5

*see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III.   DISCUSSION

In ground 1, Johnson alleges that his trial counsel failed to investigate his innocence and the possibility that Mitchell was the shooter, denying him his right to effective assistance of trial counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. ECF No. 35 at 11.  In ground 2, Johnson alleges that he is factually innocent of the crimes and is imprisoned in violation of his right to due process under the Fifth and Fourteenth Amendments. *Id*. at 21.

The respondent previously argued that ground 1 was untimely or, alternatively, was procedurally defaulted. ECF No. 55 at 6, 12.  Johnson agreed but argued that he is entitled to an equitable exception to the one-year limitation period and to his procedural default being excused because he is innocent. ECF No. 59 at 2.  I deferred consideration of the actual-innocence gateway until my merits review of the First-Amended Petition. ECF No. 63 at 5.  Because the actual-innocence gateway for ground 1 is linked to the claim for relief raised in ground 2, I analyze grounds 1 and 2 in tandem.

### A.   Actual Innocence Factual Background

During Johnson's second state habeas proceedings, he submitted a declaration by Michael McNair, Johnson's other brother. ECF No. 51-3 at 4–5.  In that declaration, which was written while McNair was an inmate at Ely State Prison, McNair declared that "Mitchell D. Johnson told [him] how he was able to commit this crime, blame it on [Johnson], and get away

6

with it because of how much they look just alike and [Johnson] has a violent record already." *Id*. at 4. According to McNair, Mitchell told him that he bought drugs from Griffin but that the drugs "did not weigh up right." *Id*. Mitchell went back to Griffin's residence, but Griffin "didn't make it right." *Id*. Later, "just before night fall," Mitchell "went back to [Griffin's residence], saw him, and opened fire" before returning home "and call[ing] 9-1-1 [to] come up with a story about people running around his house with guns." *Id*. Mitchell later "called the crime stoppers hotline as a CI and stated that [Johnson] did the shooting . . . to make sure they didn't come after him." *Id*. McNair did not come forward with this information sooner because he "was told by Mitchell that [Johnson] took a deal because he wouldn't snitch on Mitchell," but he later learned that Johnson never took a deal. *Id*.

## B. Legal Standard

"[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In this regard, "actual innocence" means actual factual innocence, not mere legal insufficiency. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). However, "where post-conviction evidence casts doubt on the conviction by undercutting the reliability of the proof of guilt, but not by affirmatively proving innocence, that can be enough to pass through the . . . gateway to allow consideration of otherwise barred claims." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation omitted). Nevertheless, the Supreme Court has emphasized that "tenable actual innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would

7

have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

"To be credible, [an actual innocence] claim requires petitioner to support his allegations of constitutional error with *new reliable evidence*—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324 (emphasis added). To be "new" for purposes of an actual innocence claim, the evidence need only be "newly presented," *i.e.*, reliable evidence "that was not presented at trial," as opposed to "newly discovered" and thus previously unavailable. *Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003). Actual innocence review incorporates "all evidence," including (1) evidence alleged to have been improperly admitted (but with due regard to its questionable reliability), (2) evidence tenably claimed to have been wrongfully excluded by the trial court, (3) evidence the defense did not present to the jury at trial, or (5) evidence that became available only after the trial. *Id*. (citing *Schlup*, 513 U.S. at 327-28).

Newly presented evidence may call into question the credibility of trial witnesses, potentially requiring credibility assessments on federal habeas review. *See Schlup*, 513 U.S. at 330. However, a *Schlup* claim attempting to discredit prosecution witnesses provides less support for actual innocence than affirmatively presenting new exculpatory evidence. *See Lee*, 653 F.3d at 94345 (holding that a reasonable juror may have rejected an expert's speculation and, even assuming a police report constituted new evidence, jurors may still have convicted the petitioner given all they heard at trial); *Sistrunk v. Armenakis*, 292 F.3d 669, 675-76 (9th Cir. 2002) (en banc) (finding that excluded evidence had "some impeachment value" but was "far from conclusive," and therefore did not undermine confidence in the conviction).

The Supreme Court has not yet recognized a freestanding "actual innocence" claim as a constitutional claim. *See, e.g.*, *McQuiggin*, 569 U.S. at 392. However, if a freestanding actual innocence claim is cognizable, to be successful on such a claim, a petitioner would be required to show "a truly persuasive demonstration of 'actual innocence.'" *Herrera v. Collins*, 506 U.S. 390, 417 (1993).

### C.    State Court Determination

The Nevada Court of Appeals addressed and denied Johnson's actual innocence claim:

> Johnson appeared to assert that his claims should be reviewed on their merits because he is actually innocent. Johnson based his actual-innocence claim upon an assertion that he has information indicating that another person was responsible for the shooting. However, the record reveals that several witnesses identified Johnson as the shooter. Police officers subsequently searched an apartment associated with Johnson and discovered ammunition consistent with the bullet casings recovered from the crime scene and clothing consistent with the type that the shooter had been wearing during the incident. In light of the strong evidence of Johnson's guilt presented at trial, he did not demonstrate actual innocence because he failed to show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *see also Pellegrini v. State*, 117 Nev. 860, 887, 34 P.3d 519, 537 (2001), *abrogated on other grounds by Rippo v. State*, 134 Nev. 411, 423 n.12, 423 P.3d 1084, 1097 n.12 (2018). We therefore conclude the district court did not err by denying Johnson's petition without conducting an evidentiary hearing.

ECF No. 51-34 at 4–5.

### D.    Analysis

The Nevada Court of Appeals reasonably determined that Johnson fails to demonstrate his innocence.

The evidence of Johnson's guilt at trial can be summarized as follows:

9

(1) Griffin's identification of Johnson during a photographic lineup,

(2) Traylor's identification of Johnson during a photographic lineup and at trial,

(3) D.T.'s identification of Johnson at trial,

(4) evidence that Johnson asked his family to contact Traylor, and

(5) the cartridge casings found at the crime scene being fired by the same firearm as three cartridge casings that were found at an apartment Johnson was associated with.

I acknowledge that each of these pieces of evidence has flaws:

(1) Griffin previously identified the wrong person and testified that the police pressured him to pick Johnson from the lineup,

(2) Traylor did not pick out Johnson from two other lineups and may have been influenced to pick Johnson based on her cousin telling her that Johnson had been the shooter,

(3) D.T. previously told the police that she could not identify the shooter,

(4) Johnson's request to contact Traylor did not admit guilt, and

(5) someone else could have hidden the cartridge casings in the apartment.

Nonetheless, I am not convinced that no juror, acting reasonably, would have voted to find Johnson guilty beyond a reasonable doubt had McNair's testimony been presented at trial. First, McNair's declaration lacks indicia of reliability. McNair is Johnson's brother, meaning his testimony could have been viewed by the jury as being biased. McNair was also in prison at the time he made his declaration, meaning his testimony could also have been viewed by the jury as untrustworthy. Second, in weighing McNair's declaration with the evidence that was presented at trial, I am far from confident that the jury would have viewed this case through a different lens. Indeed, for the jury to have credited McNair's declaration, they would have necessarily had to have discredited Traylor's testimony. Given that Traylor lacked any type of motivation to lie

about who shot her, given that she was an innocent bystander, it is beyond belief that the jury would have rejected the victim's testimony and instead trusted an unconnected and potentially partial witness. For these reasons, even if a freestanding actual-innocence claim is cognizable in non-capital habeas proceedings, Johnson fails to meet the extraordinarily high threshold of showing his actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (rejecting freestanding actual innocence claim even though the petitioner had "cast considerable doubt on his guilt"); *Jackson v. Calderon*, 211 F.3d 1148, 1165 (9th Cir. 2000) (rejecting a freestanding actual innocence claim even though the petitioner's new evidence "certainly cast doubt on his conviction").

Further, even if I were to find that Johnson has presented doubt sufficient to satisfy the less convincing proof of innocence under the *Schlup* gateway for ground 1, Johnson fails to demonstrate that his trial counsel was ineffective. In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. To establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the

proceeding." *Id*. at 693.  Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*  This investigatory duty includes investigating the defendant's "most important defense." *Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994).  It also includes investigating and introducing evidence that demonstrates factual innocence or evidence that raises sufficient doubt about the defendant's innocence. *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999).  In assessing counsel's investigation, the court must conduct an objective review of counsel's performance, measured for "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.  This includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time." *Id.* at 689; *see also Wiggins v. Smith*, 539 U.S. 510, 523 (2003).

Johnson fails to demonstrate that his trial counsel acted ineffectively in conducting his investigative duties.  Mitchell testified as a prosecution witness at Johnson's trial. ECF No. 48-35 at 100–101.  Outside the presence of the jury, following direct examination, the parties were discussing Johnson's trial counsel's cross-examination of Mitchell. *Id*. at 118.  The trial court asked whether Mitchell was present at the shooting, and Johnson responded, "[n]ot that the witness was present, that he gave me a ride from the spot" that was not near the crime scene. *Id*. Given that Johnson did not inform his trial counsel that his brother could have been present at the shooting, Johnson's trial counsel was not put on notice that Mitchell needed to be investigated as

the shooter. *See Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998) ("[C]ounsel is not deficient for failing to find mitigating evidence if, after a reasonable investigation, nothing has put the counsel on notice of the existence of that evidence."). This lack of notice belies the contention that Johnson's trial counsel's investigation into Mitchell was unreasonable. Moreover, outside the presence of the jury, Johnson's trial counsel stated that Mitchell "hung up the phone on [his] investigator" and "refused to answer [his] investigator's calls." ECF No. 48-35 at 127. As such, even if Johnson's trial counsel had known about Mitchell's supposed connection to the shooting, it is not readily apparent that interviewing him would have provided any information, much less any fruitful information. Finally, as discussed previously, it is merely speculation that the jury would have credited McNair's testimony that Mitchell was the shooter over Traylor's testimony that Johnson was the shooter. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation."). Consequently, Johnson fails to demonstrate that his trial counsel's representation fell below an objective standard of reasonableness.

I deny Johnson federal habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to Johnson. Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA). I have *sua sponte* evaluated the claims within the amended petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002). A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Applying these standards, I find that a certificate of appealability is unwarranted.

**V.     CONCLUSION**

I THEREFORE ORDER that the First-Amended Petition **[ECF No. 35] is denied**.

I FURTHER ORDER that a certificate of appealability is denied.

I FURTHER ORDER the Clerk of Court to enter judgment accordingly and close this case.

Dated: April 23, 2026

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

14